IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHARLES HAMNER                                                                                           PETITIONER
ADC #143063

V.                                        Case No. 4:24-CV-00430-JM-BBM

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                                         RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.     INTRODUCTION**

On May 13, 2024, Petitioner Charles Hamner ("Hamner"), a prisoner then incarcerated at the Arkansas Division of Correction's ("ADC") North Central Unit, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[1] (Doc. 2). Hamner subsequently filed a 25-page Amended Petition on May 20, 2024. (Doc. 3-1). Hamner then

---

[1] Hamner is currently housed at the ADC's Pine Bluff Unit. (Doc. 16 at 1).

filed a 17-page Supplement[2] to his Amended Petition on June 26, 2024, and, finally, on July 8, 2024, Hamner filed a more concise Motion to Add Evidence,[3] (Docs. 8, 9). On July 16, 2024, the Court ordered Hamner to file an Amended and Substituted Petition. (Doc. 10). Hamner filed his Second Amended Petition—the operative Petition—on July 29, 2024. (Doc. 14).

On October 1, 2024, the Court ordered service of the Amended and Substituted Petition. (Doc. 18). Respondent Dexter Payne ("Payne") filed a Response on November 25, 2024. (Doc. 24). On December 12, 2024, Hamner filed a document styled as an "Objection" to Payne's Response.[4] (Doc. 29). Accordingly, the Petition is ready for disposition. For the reasons set forth below, the Court recommends that Hamner's Petition be dismissed, and all relief requested be denied.

## II. FACTUAL BACKGROUND

On January 20, 2015, Hamner was sentenced to 28 years' incarceration in the ADC. (Doc. 24-2 at 158). Hamner was released on parole on March 2, 2020, with special conditions. *Id*. at 159.

---

[2] The full title of this document is "Supplemental Pleading Adding Additional Evidence of Illegal Sentence Without Lawful Authority 'False Imprisonment.'" (Doc. 8 at 1). Additionally, throughout this Recommendation, the Court corrects Hamner's capitalization errors internally and without brackets.

[3] The full title of this document is "Motion Requesting to Add Six (6) Pages of Sufficient Evidence for 'Probable Cause' to Believe Mr. Hamner is Currently in Custody of the Respondent's 'Without Lawful Authority.'" (Doc. 9 at 1) (errors in original).

[4] The full title of the "Objection" is "Objection to Document 24 Pages 1–10 of Respondent's Response to Petitioner's Petition for Writ of Habeas Corpus." (Doc. 29 at 1).

On May 2, 2021, authorities arrested Hamner for new felony criminal charges and transported him to the Arkansas County Jail.[5] ("ACJ"). (Doc. 14 at 17; Doc. 24-2 at 160). Hamner alleges that he met with his parole officer, Arnell Rhinehart ("Officer Rhinehart"), on May 12, 2021. (Doc. 14 at 18). Officer Rhinehart told Hamner that, "if [Hamner] would waive his revocation hearing, since he had an acceptable place to live at the expiration of said ninety (90) day parole violation, [Hamner] would serve his violation in the custody of the [ACJ] pursuant to . . . Arkansas Act 423 of March 2017[.]" *Id.* According to Hamner, Officer Rhinehart said Hamner would be released from ACJ custody—with his parole reinstated—within ninety days of May 12, 2021. *Id.*

That same day, Hamner signed a document titled, "Arkansas Community Correction Waiver of Revocation Hearing" (the "Waiver"). (Doc. 24-2 at 156). The Waiver reflects an acknowledgement that, upon signing, Hamner's release will be revoked. *Id.* The Waiver includes three different check-box options for custody, including "Arkansas Department of Correction," "Arkansas Department of Corrections-Suspended (if eligible and subject to good behavior and approved parole plan) (Reinstatement option at 90 days)," and "Arkansas Community Correction." *Id.* The only box checked is "Arkansas Department of Corrections-Suspended." *Id.* Hamner also acknowledged by signing the Waiver that: (1) he would be eligible *to be considered* for release again in November of 2021, and (2) "I understand that I will not be automatically released at that time and that I may be required

---

[5] Although the Arkansas County Jail is consistently referred to as the Arkansas County Detention Center, (Doc. 14 at 18; Doc. 24 at 8), the Court uses the initialism ACJ to prevent confusion with other terms in this Recommendation.

3

to serve the remainer of my sentence in its entirety." *Id.* Officer Rhinehart also signed a "Short Term Revocation Program Eligibility" form, indicating that Hamner had an acceptable place to live at the expiration of 90 days. *Id.* at 163. That form stated that, "in order to be released at the expiration of the 90 day period, offender must meet all eligibility requirements of the program including maintaining good behavior . . . ." *Id.*

Thereafter, Hamner began serving his parole-revocation sentence at the ACJ. In fact, according to Hamner's Pen Pack, on May 13, 2021, he was "returned from ADC release." (Doc. 24-1 at 20). On June 25, 2021, ACJ Officer Patricia Snyder wrote a letter, alleging that Hamner repeatedly threatened another officer that morning. (Doc. 14 at 59). As a result, Officer Rhinehart sent a request to the Arkansas Parole Board, asking that Hamner "be removed from the 90 days short term Revo and complete his full revocation in ADC." *Id*. at 60. That request was approved on June 30, 2021. *Id*. That same day, Hamner was transferred to the ADC's Ouachita River Unit ("ORU"). (Doc. 24-1 at 19–20). His removal from the short-term revocation program is the basis of Hamner's Petition.

Hamner was denied parole in November 2021.[6] (Doc. 24-1 at 18–19). Hamner subsequently initiated at least two *pro se* actions pursuant to 42 U.S.C. § 1983, alleging that his due process rights were violated. *See Hamner v. Mannis*, No. 2:22-CV-00028-BSM-PSH, 2022 WL 1815659 (E.D. Ark. May 4, 2022), *report and recommendation adopted*, 2022 WL 1811533 (E.D. Ark. June 2, 2022); *Hamner v. Straughn*, No. 2:23-CV-00195-BSM-ERE, 2023 WL 7174418 (E.D. Ark. Oct. 13, 2023), *report and*

---

[6] Hamner's parole was denied as recently as January 29, 2024. (Doc. 24-1 at 11).

*recommendation adopted*, 2023 WL 7158550 (E.D. Ark. Oct. 31, 2023). In both cases, the courts observed that § 1983 actions could not provide the relief sought by Hamner—release from confinement. *Hamner v. Mannis*, 2022 WL 1815659 at *3; *Hamner v. Straughn*, 2023 WL 7174418 at *2. Additionally, United States Magistrate Judge Edie Ervin noted that, "[i]t is debatable whether Mr. Hamner's transfer from the short-term revocation program to ADC custody even involved a liberty interest. Without a liberty interest at stake, there can be no due process violation, in either a § 1983 case or a federal habeas action." *Hamner v. Straughn*, 2023 WL 7174418, at *2.

Subsequently, on May 13, 2024, Hamner initiated this habeas action. (Doc. 2). Also pending before the Court are four Motions filed by Hamner, (Docs. 33–34, 36–37).

### III.   DISCUSSION

#### A.   Hamner's Claims

Hamner's Petition alleges that authorities wrongfully transferred him from the ACJ to an ADC facility without a disciplinary hearing. (Doc. 14 at 6, 8–9). In support of this argument, Hamner cites Arkansas Code Annotated §§ 16-123-105(a), 12-27-127(b)(3)(A), and 12-64-502. *Id*. at 5, 21–22. Hamner maintains that the mandatory language in these statutes grants him a liberty interest in either: (1) the short-term parole revocation program, or (2) custody in the Arkansas Division of *Community Correction* ("ADCC")—as opposed to ADC custody. *Id*. at 7–8, 22. Consequently, Hamner alleges that authorities violated his due process rights when transferring him to the ADC from the ACJ without notice and a disciplinary hearing. *Id.* at 5, 19–22.

For relief, Hamner asks that the Court "issue his writ of habeas corpus because of his substantial evidence he's [] served his sentence of 90 days and remand him back to the lawful custody of the [ADCC][.]" (Doc. 14 at 13). Hamner also asks for reinstatement of his parole "because his time in the ADC was suspended." *Id.* In his brief, Hamner further asks this Court to "immediately release [Hamner] from being falsely imprisoned without lawful authority" and to transfer him back to ADCC custody with a reinstatement of his parole because "the sentence administratively imposed by the [ADCC] as of May 12, 2021, has been served as a matter of law[,] [and] the petitioner is entitled to the relief he has requested [from] this court[.]" *Id.* at 17.

In his Response, Payne discusses Hamner's claims and his history of confinement. According to Respondent: (1) Hamner's claims do not implicate a liberty interest, (Doc. 24 at 6–7), and (2) Hamner was in ADC custody on May 13, 2021, immediately following his revocation, *id.* at 7–8.

In his Objection to Respondent's Response, Hamner asserts that: (1) he is seeking a "quantum change" in custody, which is cognizable in habeas, (Doc. 29 at 4–7); (2) he has a legitimate claim of entitlement to release pursuant to the mandatory language of Arkansas Code Annotated § 12-27-127(b)(3)(A), *id.* at 7–10; (3) his participation in the program was a "conditional liberty," which creates a liberty and property interest in a hearing before his removal, *id.* at 11–13; (4) he had a liberty interest in remaining in the short-term parole revocation program for the "agreed upon" 90 days, and, because his parole was to be reinstated within 90 days, his status was akin to that of a parolee, *id.* at 13–15; (5) he had a detainer lodged by "Arkansas County Parole and Probation Office," and he was in

6

"Arkansas County custody" for 90 days, *id.* at 15–16; (6) Hamner was in the ACJ under a contract with the ADCC and subject to all rules regarding disciplinaries, *id.* at 16–18; and (7) Respondent's dates regarding his sanction are incorrect, as he was arrested on May 2, 2021, and sanctioned on May 12, 2021,[7] *id.* at 18. Finally, Hamner takes issue with Respondent's suggestion that Hamner committed aggravated assault on a family member, domestic battering, and terroristic threatening, leading to his parole revocation. *Id*. at 2–4. Instead, Hamner alleges that he was never convicted of any of these crimes, and the charges were nolle prossed. *Id*.

B.   **Analysis**

Reading all of Hamner's various filings and exhibits together, the Court gathers that Hamner asserts a liberty interest in the short-term parole violation program and/or ADCC custody. However, Hamner is not entitled to the relief he seeks. His Petition should be dismissed, and all relief requested should be denied.

A liberty interest "may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). Liberty interests arising from *state law* are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to

---

[7] The Court agrees that Hamner was arrested on May 2, 2021, (Doc. 7 at 86), and sanctioned on May 12, 2021, the day he signed his Waiver of Revocation Hearing, (Doc. 7 at 61). In the Response, Respondent notes that "Mr. Hamner was sanctioned for violating the conditions of his parole on May 3, 2021, and was arrested on May 12, 2021." (Doc. 24 at 3).

7

actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Hamner cites various statutes in support of his "liberty interest" argument. The Court begins by analyzing the central statue cited by Hamner: Arkansas Code Annotated § 12-27-127(b)(3)(A). (Doc. 14 at 8). Specifically, this subsection is titled, "Transfer to the Division of Community Correction—Transfer of an inmate between divisions." It states as follows:

> An inmate may be administratively transferred back to the Division of Correction from the Division of Community Correction by the Post-Prison Transfer Board following a hearing in which the inmate is found ineligible for placement in a Division of Community Correction facility as he or she fails to meet the criteria or standards established by law or policy adopted by the Board of Corrections or has been found guilty of a violation of the rules of the facility.

Ark. Code Ann. § 12-27-127(b)(3)(A).

Thus, Arkansas Code Annotated § 12-27-127(b)(3)(A) outlines a hearing associated with transfers between the ADC and ADCC. From the Court's review of the record, however, even if this statute did apply to Hamner, Hamner waived his revocation hearing *before* his parole was revoked and *before* he was transferred from ADCC to ADC custody on May 13, 2021. (Doc. 24-1 at 20). Because Hamner waived any process before his transfer to ADC custody, Hamner must point to another state statute to allege a cognizable habeas claim.

Hamner also cites Arkansas Code Annotated § 16-123-105(a). (Doc. 14 at 5). This is a section of the Arkansas Civil Rights Act. This statute states:

8

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

Ark. Code Ann. § 16-123-105(a). Suffice it to say, while Arkansas Code Annotated § 16-123-105(a) clearly provides for a civil rights cause of action, this statute does not create a liberty interest in, implicate, or even discuss, the short-term parole revocation program.

Another statute cited by Hamner, Arkansas Code Annotated § 12-64-502, is a subsection in the "Military Justice" chapter of the Arkansas Code. (Doc. 14 at 22). This subsection explains the procedures for "charges and specifications," presumably in the military context. *See* Ark. Code Ann. § 12-64-502. It is unclear how this statute implicates Hamner as an ADC prisoner. Without a relevant statute working to create a liberty interest in this case, Hamner fails to state a cognizable habeas claim.[8]

Aside from Hamner's cited statutes, the Court also addresses whether Hamner's removal from the short-term parole revocation program: (1) "impose[d] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life;" or (2) "inevitably affect[ed] the duration of [Hamner's] sentence." *Sandin*, 515 U.S. at 484, 487. As the Eighth Circuit has held, when analyzing state-created liberty interests, courts

---

[8] To the extent that Hamner alleges a protected liberty interest in the *possibility* of parole, that claim also fails. The Eighth Circuit Court of Appeals has repeatedly noted that Arkansas statutes create only a *possibility* of parole, and thus do not establish any right to release on parole which would invoke due process protections. *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *see also Hamilton v. Brownlee*, 237 Fed. Appx. 114, 115 (8th Cir. 2007) (holding Arkansas parole statutes do not create protectable liberty interest in discretionary parole decisions, and prisoner did not have protectable liberty interest in having parole board follow its own hearing policy).

"focus on the nature of the deprivation resulting from a state regulation, rather than the language of a particular regulation." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (cleaned up). The Court finds that Hamner's removal from the short-term parole revocation program did not impose an atypical or significant hardship, nor did it inevitably affect the duration of his sentence. As a convicted prisoner with his parole revoked, Hamner had no liberty interest in better surroundings than prison. For a convicted prisoner such as Hamner, a mere transfer to an ADC *prison* cannot represent an atypical or significant hardship in relation to the ordinary incidents of *prison* life. And the removal from the short-term program did not inevitably affect the duration of his 28-year sentence: Arkansas parole officials retain the discretion to release Hamner on parole in the future, or he may be required to serve the remainder of his sentence in its entirety. (Doc. 24-2 at 156).[9]

In conclusion, Hamner's removal from the short-term parole revocation program did not involve a protected liberty interest. Resultantly, Hamner is not entitled to the relief he seeks. His Petition should be dismissed, and all relief requested should be denied.

## IV.   CERTIFICATE OF APPEALABILITY

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. The Court can issue a certificate of appealability only if

---

[9] Additionally, the Court notes that the Due Process Clause alone "confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Persechini v. Callaway*, 651 F.3d 802, 808 (8th Cir. 2011) (quoting *Sandin,* 515 U.S. at 480) (additional quotation omitted).

Hamner has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)–(2). In this case, Hamner has not provided a basis for the Court to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

## V.     CONCLUSION

The Court recommends dismissal of Hamner's Second Amended Petition, (Doc. 14), without prejudice and denial of Hamner's pending Motions, (Docs. 33–34, 36–37), as moot.

IT IS THEREFORE RECOMMENDED THAT:

1.      Hamner's Second Amended Petition for Writ of Habeas Corpus, (Doc. 14), be DISMISSED without prejudice.

2.      Hamner's Motion for Writ of Mandamus, (Doc. 33), Motions for Status Update, (Docs. 34, 36), and Motion to Appoint Counsel, (Doc. 37), be DENIED as moot.

3.      A Certificate of Appealability be DENIED.

DATED this 19th day of May, 2025.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE